May it please the Court, Sassoon Nalbandian on behalf of Petitioner Sarkis Yasaian. Your Honors, in this case, the I.J. initially granted asylum. The B.I.A. on appeal stated that the record is simply too deficient. Excuse me for a second. We need to start the clock, please. Thanks. Go ahead. Do you want me to? No, no, you can go ahead. The I.J. basically granted asylum, B.I.A. on B.I.A. appeal. Government counsel stated the record is simply too deficient. Upon remand, there was a lengthy discussion between government trial attorney and the I.J. about whether there should be a de novo hearing or a recreation of the record. Government attorney Zills stated we probably should have a de novo hearing. I.J. asked what the government wanted. Next page, I think we would ask for a new hearing. Several pages later, the I.J. states, it appears that it's not too much of an exaggeration to state that almost every other line is indiscernible, and I will say beyond that that we had an interpreter who has been disqualified. And then the trial attorney goes on to state that the way you describe it to me, to the I.J., the only way to do it would be a de novo hearing, because if what you're telling me is that the interpreter was of questionable value, anything that is in the translation interpretation would be of questionable value. Suppose we throw out the transcript. We say you can't use it to impeach the way the I.J. did. Didn't the I.J. also find that your guy said something at the second hearing that was contradicted by his application that isn't affected by this transcript problem? Well, Your Honor, that is a very good question. Basically, the first issue is the I.J. stated only one apparent inconsistency between the written statement and the testimony, which was basically with regard to the imprisonment. The individual mixed up the dates when he was in prison and stated that at that moment he was not in prison when, according to the statement, he was. We do not know whether the I.J. with this inconsistency alone, given that he found him credible the first time as well, this is an elderly man from Iran, we do not know if the I.J. based on that inconsistency alone would have denied asylum. Wait, wait, wait. You said that he found him credible the first time? Where's that in the record? Oh, he found him credible and granted asylum during the first hearing. The one with the botched record? Correct. He won asylum, and then the government appealed. Okay. So you're saying there has to be at a noble hearing you're objecting to the use of the botched transcript, but you want to rely on something that's in the earlier hearing anyway? No. You can't have it both ways. Either you're going to have to have let the I.J. use the botched transcript for impeachment and take that for what it is, and then you can use your earlier statement or not, but you can't have it one way and not the other. Well, Your Honor, that is correct. Basically, we are not using any statements from the first transcript. But you're using what you said was the finding that there was credibility. Okay. I thought your point was that we need to go to the second hearing, the de novo hearing, and that's it. We contain it as Judge Silverman suggested. We just put aside the earlier transcript. We don't rely upon any impeachment evidence there. The real question is whether there was substantial evidence in the record for the I.J. in the second de novo hearing to make a determination necessary to find an adverse credibility determination. That is correct. Isn't that what we're talking about? Yes. That is exactly the question. And I think because the I.J. did not do that, because the first transcript was employed, we would ask for a remand for the I.J. to make a decision. But at least as I understand it, the second hearing, your client testified twice, I'm checking my notes here, that on the occasion that he was taken to the comitar, however you say it, that the attackers left after 45 minutes to an hour, that he did not call the police afterwards. When he was asked about the discrepancy regarding that, he didn't recall what he said in his application. So he got the application and what allegedly happened, which is the gravamen of his claim, is it not? Well, Your Honor, it's one of the incidents in the claim. It's an important one. It goes right to the heart of his claim of persecution. I understand what the Court's concern is. If the I.J. had made that decision and said, based on this sole inconsistency, I'm going to deny asylum, this Court would be able to review under substantial evidence. But we do not know what the I.J. would have done had the first transcript not been used for impeachment improperly. Aren't we in a position to do what Judge Silverman indicated, which is to simply ignore any evidence related to the first transcript or anything related to the first hearing, look at the second hearing and find out whether there is in the record substantial evidence to buttress an adverse credibility determination by the I.J.? I think in that case, this Court would be mixing, basically making its own credibility determination. I mean, we would be looking at what the I.J. spoke about and said in making his determination. I understand the Court's question, the concern. But the issue is whether or not the standard of review is whether substantial evidence would support the I.J.'s credibility finding. Right. And if the I.J.'s credibility finding is based on improper factors and there's this one factor alone that is the only inconsistency, the I.J. is in the best position to judge based on the demeanor, based on the applicant's testimony, whether he is credible or not. Are you saying, counsel, that a single basis for an adverse credibility is insufficient? There's got to be more than one? No, Your Honor. I'm not saying that. I know there is one that goes to the heart of the claim. Actually, in this case, there is also the client stated that he does not recall and he may have been mistaken, which is reasonable answers. He could have made up an excuse. He stated that. The I.J. did not go on to state why that was an unacceptable explanation because already the entire record had been tainted by the use of the first transcript. So what I'm saying is based on that sole inconsistency, we do not know if the I.J. would have found him credible. And the Court, by reviewing under substantial evidence, would be saying the I.J.'s decision is correct to deny based on one inconsistency, which it may not even have been the I.J.'s decision. That is our position, Your Honor. And the second issue is, in this case, the government states that basically it would not be fundamentally unfair to use the – or actually that it was unfair, they imply, but it was not fundamentally unfair to use the first transcript from the first hearing. But the government's own position was that anything was of questionable value. Your Honors, unless you have any other questions, I'd like to reserve the remainder of my time for rebuttal. Thank you, Mr. Alvandi. Good morning. Good morning. May it please the Court, Zoe Heller on behalf of the Attorney General. This case involves a native and citizen of Iran who was found that he failed to meet his burden of establishing his eligibility for asylum because he was found not credible. The immigration judge here, which was the same immigration judge from the first hearing in 2002 and the second hearing in 2004, based his adverse credibility determination on ten specific inconsistencies. And Petitioner does not contest that these inconsistencies are material and that they go to the heart of his claim. Here on remand, the board left it to the discretion of the immigration judge to put together a complete record for its review. Counsel, how many of the ten specific inconsistencies were determined with reference to the transcript of the first hearing? Nine of those inconsistencies were based on a comparison between the alien's testimony at his first hearing and his second hearing. And our position is that it was permissible for the immigration judge to rely on the testimony from the 2002 hearing in basing his adverse credibility determination. Both of these hearings, Mr. Yossian provided sworn testimony. There is nothing in the regulations or any case law from this circuit or from the board not permitting the agency to rely on sworn testimony and evidence in making an adverse credibility determination. Assuming the transcript is a legitimate transcript. Yes. Yes. And here, again, the issue, Petitioner Counsel uses the term botched, but here we have what were indiscernibles in the record. In other words, it appears based on the explanation by DHS Counsel and by the immigration judge at the second hearing that it wasn't properly recorded. So therefore, the stenographer puts an indiscernible. There was no allegation during any of these proceedings that Mr. Yossian had any translation or interpreter problems. That issue is raised really on appeal to this Court, and he has not identified any instances where his testimony was mistranslated. Petitioner? What about opposing counsel's statement that the government agreed that the old transcript would not be used? Does the government disagree with that? I disagree with that. There's nothing in the record that said that DHS Counsel waived any right to rely on the testimony that's in the record from the first hearing. Petitioner is relying on a colloquy between the immigration judge and DHS Counsel regarding how they're going to make a complete record on review, whether or not they were going to use attorney notes because Mr. Yossian proceeded in both proceedings pro se, or whether or not they were going to take new testimony and have a new hearing in order to put together this record. And the immigration judge did mention that the interpreter was disqualified, but, again, we have no ‑‑ there's no evidence in the record as to why this interpreter was disqualified. And the immigration judge instead on ‑‑ and this conversation takes place in AR 125 to 26, when he refers to the interpreter being disqualified, the IJ said, it would seem to me that at the very least the interpreter did not speak up in a way that could be transcribed. So this is a transcription error. And what does it mean in the context of this case that the interpreter was disqualified? What does that mean? It's just a fact of the record that the interpreter that was used is disqualified. We have no other information as to why. Does that mean that he or she would not be used in further immigration judge hearings? Again, I really do not know the circumstances at the agency level as to the basis of the disqualification or whether or not Okay. Well, let's assume for a moment that the IJ was finding that for whatever reason, this translator would not be used, interpreter would not be used in further immigration hearings. And we also have the problem that there are a number of indiscernibles in the transcript. How could it be fair, how could it be due process that this man's testimony would be impeached based upon a partially indiscernible transcript, and even when it is discernible that it's based upon the efforts of either an incompetent or whatever interpreter? Well, here, as Your Honor points out, the Board here did, on its review, find that the conflicts in the testimony were based  on the fact that there was an interpreter involved who was disqualified. Yes, that is a fact that the interpreter was disqualified. Isn't that the necessary predicate to anything? I mean, let's say, for example, that you had an interpreter who didn't speak Farsi, and you have a person that's there on the stand, and the interpreter speaks Spanish, doesn't know anything, and says some mumbo jumbo. We wouldn't give any credibility to that. The IJ wouldn't give any credibility to that. Why should we give any credibility to whatever remained of the transcript of the first hearing when the interpreter was disqualified? Well, again, without any understanding as to the basis for the disqualification, just because, let's say, 10 percent or 20 percent of the record was found indiscernible, does that mean that this Court should disregard the clear portions which remain uncontested? You know, discernible or indiscernible, that relates to the transcription. Is that right? That's correct, Your Honor. This is on an audio tape, and someone transcribes it. Correct. Now, regarding the translation problems that Judge Smith was just asking you about, do I understand correctly that it's your position that they never complained about the translation to the Board? Is that your argument? Well, to the Board, the arguments were made about Mr. Yossi not having counsel and about, again, the issue with using the prior transcript. But there is no clear identified argument that he was faulting a translator. That's what I'm asking you. Correct. That was not raised before the Board. Correct. They are raised predominantly in counsel's argument to this Court. What do you mean by predominantly? The 90 percent of his argument is based on a translation error. You mean here? Correct. But it was not raised at all before the Board? My understanding, and again, I would hesitate to check, you know, with my record, but my reading of his brief did not challenge any translation problem. It was a transcription error, which he raised and the Board addressed that and said, well, here the immigration judge based the adverse credibility determination on the clear portions of the transcript. Again, there's no record evidence that there was any problem with Mr. Yossi understanding the interpreter in this Court's case law, Chio v. INS, and subsequent cases discuss whether or not there is a translation error in looking at the record and seeing whether or not how the record flowed or what objections were made with the translator to determine whether or not in fact there was a problem with understanding the alien's testimony. It's not just a blanket sweeping argument that I didn't understand my translator and therefore this Court should ignore the testimony. Let's assume for discussion purposes that because of the problem with the translator whether or not raised with the BIA explicitly and because of the indiscernible portions of this transcript, we decide that due process requires us to reject any findings based upon that. Is there sufficient evidence on the one remaining credibility count to permit us to affirm the BIA without reference to the first hearing in any way? That's our position, Your Honor. If this Court finds that it cannot, that the board was and the immigration jurors were incorrect in relying on the 2002 transcript, there is, as Your Honor pointed out before, one inconsistency based on the sworn statement in the asylum application on the 1997 incident where he states that after his house was broken into and his teeth were broken that he was taken to the comité. Let me tell you the problem I have with that or concern I have about that. The IJ's finding on page 18 says after going through all of these, the finding is the discrepancies, and that's in plural, the discrepancies as set out above are such that the Court cannot say what to believe about the Respondent's testimony. It looks to me like this is a cumulative finding. You take all the discrepancies together. So if we're going to throw out nine of them, I'm concerned that, you know, the judge might have said, well, if there was only one, it's not a big deal. But the discrepancies as set forth above, you know, it's a cumulative kind of analysis. In toto, when the immigration judge looked at it, he said it did not have the – it's like saying it didn't have the ring of truth. But, again, the immigration judge looked at that and then went on to determine whether or not Mr. Yacine should have provided corroborative evidence. What I'm saying is if the IJ said there are ten things wrong and any one of them would have been sufficient, that's one thing. But here the judge kind of says, you know, you take the whole package and when you look at it all together, and if I'm saying – if we're going to say you can't consider nine of them, that sort of undercuts the rationale of the IJ. Well, again, the circuit precedent is clear that one inconsistency which goes to the – since this is a pre-real ID act case, which goes to the heart of the claim will support an adverse credibility determination. And I see I'm out of time. And, again, the Respondent asks this Court deny the petition for review and uphold the agency's determination. Thank you. Thank you, Ms. Heller. Ms. Heller says you didn't complain about the translation before the board. Is that true? That's not true, Your Honor. On page 14 of the administrative record, the last three paragraphs are specifically about that issue, that the interpreter was previously disqualified, everything by the government attorney's own admission was of questionable value. Since both parties agreed that the interpreter at the time of the first hearing was incompetent to translate, and since the government argued in its brief and the board agreed that the transcript was deficient, it was extremely unfair and prejudicial to use unreliable and deficient transcript. And also, even if that was not in the brief, although it is, the BIA affirmed under matter of Burbano and there's case law. You're talking a little too fast for me. I'm sorry. The BIA affirmed under matter of Burbano and there's case law that states that whatever was raised at the time of the hearing is also properly before this court. And there was lengthy discussions about the interpretation and the faulty interpretation. The second question, Your Honor, Judge Smith asked about how interpreters are disqualified. I know it's not in the record, but basically I have complained against several interpreters. They're very rarely disqualified unless they find that there is an egregious error in the translations of that interpreter consistently. Does this record show why this interpreter was disqualified? It does not. It does not. Presumably the immigration judge is the one that made the reference would be the one who knew, right? Correct. And he decided he could rely upon the first transcript portions that didn't say inaudible. Well. Isn't that the case? That was an error, Your Honor. Well, you're telling me it's an error, but you're telling me let's rely upon the I.J. for the evaluation of the interpreter, but let's not rely upon the I.J. based on his evaluation of the interpreter because he decided he could rely upon what was in the transcript. Your Honor, I see the Court's position. Even if the – I understand the Court's position, but I think that the I.J. stating that the interpreter was disqualified and then the government stating that if the interpreter is disqualified. Well, let's take a look at the so-called concession by the government. I mean, I took a look at what was cited in your brief. If I take it, it's AR-125 at lines 12 through 14, and it continues from that. Is that what you're referring to when you say the government's conceded the problem? I don't see the concession. It's on AR-126, pages 5 to 8. Okay. The way that starts, the way you describe it to me, he's talking to the judge, that would probably be the only alternative, because if what you're telling me is that the interpreter was a question of value, I don't see a concession by the government. I see a statement that says, okay, I.J., if you're right that we can't trust the interpreter, which comes exactly back to the problem. It's not the government saying independently the interpreter was questionable. It's the government attorney acknowledging the I.J. statement. That's the very same I.J. who decided he could rely upon that transcript when it wasn't inaudible. Yes. And, Your Honor, in this case, it was even if we take out the interpretation issue, there are still, by the government's own admission, way too many indiscernible. Sure. But what's discernible, I mean, you may record a transcript, record a hearing, and part of it doesn't get recorded and part of it does. That doesn't mean the part that was recorded is inaccurate or can't be relied upon. Well, Your Honor, actually, one great example is, for example, when they ask about whether he converted at what age he converted. And the first transcript reads, ever since I was 10 years old, then there's a period, which we do not, I mean, basically know where it stops. But then it says my parents converted indiscernible. That's a key indiscernible, whether it says my parents converted when I was 10. We do not know what happened in the testimony. The I.J. and the trial attorney agreed to do a de novo hearing, and we would simply ask that the I.J. have a chance to make a determination in the first instant. We meant to the I.J. How do you know he didn't? Because he was the one that made the decision that concluded that your client was not credible, based upon the inconsistencies. Because, as Judge Silverman asked government counsel, Your Honor, the I.J. in the decision states that there are way too many, there are basically discrepancies and he doesn't know what to believe. Perhaps with only one inconsistency, the I.J. would have known what to believe, given the rest of the testimony. You're out of time unless Judge Clifton has anything. Oh, okay. I apologize. Thank you very much. Thank you. Ms. Heller, thank you. The case just argued is submitted.
judges: Silverman, Clifton, Smith M.